**BLUE BELL, Inc. v. UNITED STATES.**

No. 48833.

United States Court of Claims.

Decided Nov. 7, 1950.

Richard B. Barker, Washington, D. C., for plaintiff.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant.

Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff sues for a refund of income taxes. When its return for the fiscal year ending November 30, 1942, was examined, the Revenue Agent disallowed as a deduction $25,002.86 of the bonuses plaintiff paid its officers for that fiscal year, on the

ground that the amounts paid were excessive in this amount. Plaintiff duly filed a claim for refund, which was disallowed, and it then brought this suit.

The only question presented is whether or not the amounts plaintiff paid its officers were reasonable compensation for services rendered. Defendant says that they were not, that in part they were not for services rendered, but that, in reality, $25,002.86 thereof was a distribution of the profits of the business among those who controlled it.

The Internal Revenue Code, 26 U.S.C. A. § 23, allows a deduction in computing net income of "ordinary and necessary expenses". Officers' compensation is, of course, an ordinary and necessary expense, but if the amounts paid them are not for services rendered, but are a distribution of profits, or a gift, or the like, then they are not deductible.

Six officers are involved. In 1937, when they took over the management of plaintiff's business, they were paid total salaries of $78,500.00. In the year in question, 1942, they were paid total salaries of $274,225.00. However, in order to make a fair comparison of salaries paid for these six years there should be added to the amount paid in 1941 the sum of $36,625.00, because this was a bonus for this year, although paid in 1942, and there should be deducted from the amounts paid in 1942 the same amount. With this adjustment, the salaries paid over these six years were as follows:

| Year: | Total compensation |
|---|---|
| 1937 | $78,500.00 |
| 1938 | 116,250.00 |
| 1939 | 137,875.00 |
| 1940 | 142,296.00 |
| 1941 | 186,283.00 |
| 1942 | 237,600.00 |

In six years their compensation had trebled. So far as the record shows, they were rendering the same service in 1942 that they were rendering in 1937.

Bonuses were first paid on December 1, 1941, followed by bonuses on March 4, June 5, August 31, September 30, and in October and November 1942. They totaled $101,155.30. They were not paid pursuant to contract.

Plaintiff undertakes to justify these bonuses in this way: J. C. Fox was employed by plaintiff in 1936 as its president. In 1937 plaintiff acquired the Globe-Superior Corporation, which acquisition combined the two largest manufacturers of men's work clothes. Mr. Fox then set about to secure the best management personnel possible. He got them partly by this representation: he said to them that the "going was going to be awfully rough for a year or two, but if they could sell themselves on this idea, as I had sold myself, when we got the thing to rolling and made the organization more efficient and started getting satisfactory results, that they would participate and have compensation accordingly."

In 1937 the officers of the company had acquired 75.6 percent of plaintiff's outstanding stock; in 1942 they owned 63.6 percent; it was, therefore, within the power of the officers to vote themselves additional compensation, within reasonable limits, and so it was possible for Mr. Fox to keep his promise. This promise, however, was not authorized by the stockholders or Board of Directors.

But the question is, did improved business conditions justify the bonuses?

Under the new management the business prospered. In 1937, when the new management took over, the company's sales amounted to $12,000,000, in round figures; in 1942 they amounted to $20,000,000, an increase of about 66⅔ percent. The volume of goods shipped in 1942 was about 13 percent more than in 1937. Net profits went up from $86,000, in round figures, to $1,500,000. This was an increase of about 1,644 percent. Profits had shown a steady increase. In 1938 profits had increased over 1937 by 77 percent. In 1939 they had increased by 343 percent over 1938. There was a slight decline in 1940; but it 1941 they were 34 percent greater than they were in 1940, and in 1942 they were 66 percent greater than in 1941.

Plaintiff's officers did in these six years a fine management job. They increased the volume of plaintiff's sales by 13 percent,

the dollar volume by 66⅔ percent, and the net profits of the business over 1,600 percent. "The laborer is worthy of his hire." They were entitled to increases in their salaries.

But we take it the enterprise was not being operated for the benefit of the officers alone. The following table presents a comparison between net profits, officers' salaries, and dividends paid:

| Year | Net profit before taxes | Percent increase | Dividends | Percent increase | Officers' compensation | Percent increase |
|---|---|---|---|---|---|---|
| 1937 | $86,101 | ............... | $234,475 | ............... | $78,500 | ............... |
| 1938 | 151,743 | 77 | 56,329 | —76 | 116,250 | 48 |
| 1939 | 673,232 | 343 | 237,826 | 1 | 137,875 | 19 |
| | | | | (over 1937) | | |
| 1940 | 664,915 | —1 | 242,270 | 2 | 142,296 | 3 |
| 1941 | 890,872 | 34 | 241,190 | 0 | 186,283 (adjusted)* | 31 |
| 1942 | 1,482,407 | 66 | 240,830 | 0 | 237,600 (adjusted)* | 28 |

*The adjustment is explained on page 13.

Whereas salaries increased more than 300 percent in five years, dividends increased hardly at all. In the five-year period after the new management took over, the average dividends were $25,000 less than in 1937, the year they took over. The minority stockholders, therefore, benefited not at all from the tremendous increase in plaintiff's profits. Only the officers benefited, who owned about two-thirds of the stock. When profits got big, no part of them were distributed to the stockholders generally, but only to those in control of the corporation by way of bonuses. The officers were entitled to bonuses, but they were not entitled to them to such an extent that nothing was left for an additional distribution to the minority stockholders.

Without any bonuses at all, officers' salaries had increased in the five-year period by 121 percent—more than doubled. With the bonuses they had more than trebled.

Had the minority stockholders been able to deal at arm's length with the management, we cannot imagine their having agreed that all increases in profits should go to management and none at all to the minority stockholders. This seems to us a fair test to use in determining whether or not these bonuses were reasonable.

It is true that the distribution to all the stockholders of the amount paid in bonuses would have increased their dividends very little, but, at the same time, it is difficult to avoid the conclusion that those in control of the corporation saw the profits there and distributed them, or some part of them, to themselves, as additional compensation for their services, instead of making a general distribution. By so doing they reaped the benefit of the profits at the expense of the minority stockholders, and they secured for tax purposes a deduction of these amounts from corporate income.

The Commission of Internal Revenue has disallowed $25,002.86 of the total bonuses deducted of $101,155.30. We are not convinced that he was wrong, and the burden is on the plaintiff to show that he was wrong.

Plaintiff's petition is dismissed.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.